NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David L. NASH, | |
| Plaintiff, | Civ. No. 11-3409 |
| v. | OPINION |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

### I. INTRODUCTION

This matter has come before the Court upon the Motion for Summary Judgment filed by Defendants Greg Bartowski ("Bartowski"), Erik Pedre ("Pedre"), and Jamie DiStefano ("DiStefano") (collectively, "Defendants"). (Docket Entry No. 32). Plaintiff David L. Nash ("Plaintiff") opposes the motion. (Docket Entry Nos. 37, 38).[1] The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Defendants' Motion for Summary Judgment is granted.

---

[1] Plaintiff filed two opposition briefs on February 20, 2012. The first submission, (Docket Entry No. 37), purports to be a brief in opposition to the previously decided Motion to Dismiss filed by Defendant Chenna Reddy. (Docket Entry No. 30). The second submission, (Docket Entry No. 38), purports to be a brief filed in opposition to both the Motion to Dismiss and the instant Motion for Summary Judgment. The Court, finding both submissions responsive to the Motion for Summary Judgment, considers both in deciding the instant motion.

1

## II.  BACKGROUND

For the purposes of this motion, the Court assumes the parties' familiarity with the underlying facts of the case and briefly summarizes those facts relevant to the Court's decision.

### A.  Inmate Attack

Plaintiff has been incarcerated at New Jersey State Prison at all times relevant to this case.  (Docket Entry No. 1 at ¶ 1; Docket Entry No. 32, Attach. 2 at ¶¶ 1, 19).  On October 10, 2010, Plaintiff was attacked in the prison mess hall by another inmate, Charles Williams ("Williams").  (Docket Entry No. 1 at ¶ 20; Docket Entry No. 32, Attach. 2 at ¶ 2).  Plaintiff sustained injuries during the attack and claims that Defendants Bartowski, Mark Salaga ("Salaga"), William J. Anderson ("Anderson"), Jeffery Bell ("Bell"), James Drumm ("Drumm"), and Charles Warren ("Warren") knew of Williams' propensity to attack other prisoners.  (Docket Entry No. 1 at 12-14).

### B.  Medical Treatment

According to Plaintiff, following the attack, he was taken to the prison emergency medical unit where he was treated for the injuries he sustained.  (*Id*. at 14).  In the course of his treatment, Plaintiff saw two doctors, Ihuoma Nwachukwu ("Nwachukwu"), Chenna G. Reddy ("Reddy").  Plaintiff claims he received inadequate medical attention because he was initially treated with only ibuprofen and ice, and an appointment with an ophthalmologist was not scheduled.  (*Id*. at 14-15).

### C.  Retaliation

Plaintiff also alleges that prison administrator Bartowski and correctional officers DiStefano and Pedre retaliated against him for filing grievances after the attack by Williams. (*Id*. at ¶ 34).  Specifically, Plaintiff claims that "Bartkowski, et al. (sic) came to plaintiff's cell

and harass (sic) Plaintiff for filing claims against him and others under his Administration." (*Id*. at ¶ 35). According to Plaintiff, Bartowski also told DiStefano and Pedre to harass, torment, and intimidate Plaintiff. (*Id*. at ¶ 36). They apparently complied with Bartowski's request, verbally harassing Plaintiff with "defamatory words" and sexual comments, such as "pervert." (*Id*. at ¶ 37).

Plaintiff contends that DiStefano and Pedre then conspired to confiscate Plaintiff's television. On February 27, 2011, Plaintiff claims that Pedre entered his cell and ordered him to turn over his television. (*Id*. at ¶ 39). When Plaintiff refused, Pedre destroyed the television and attacked Plaintiff, throwing him on the floor and injuring his back. (*Id*.). Plaintiff contends that he was hurt further as he was handcuffed. (*Id*.). He claims that DiStefano then sounded an alarm and told the officers who responded to the scene that Plaintiff had thrown the television at him. (*Id*. at ¶ 40).

   D.  *Prison Grievance Process*

Following the attack by Williams on October 10, 2010, Plaintiff submitted a number of grievances. First, on December 22, 2010, Plaintiff filed a claim under the New Jersey Tort Claims Act, Title 59, *et seq*. (*See* Docket Entry No. 37, Attach. 1, Ex. A at 1; Docket Entry No. 38 at ¶ 1). In a letter dated May 11, 2011, the Office of the Attorney General, upon reviewing Plaintiff's correspondence, concluded that there was no liability on the part of the State of New Jersey and declined to make any voluntary payments. (Docket Entry No. 37, Attach. 1, Ex. A at 1).

According to Plaintiff, he also submitted an Inmate Remedy Systems Form ("IRSF") on February 22, 2011. (Docket Entry No. 37, Attach. 1, Ex. C at 1; Docket Entry No. 38 at ¶ 1).[2] On the IRSF, Plaintiff complains that on February 16, 2011, DiStefano stopped at Plaintiff's cell "for a couple of seconds" and called Plaintiff a "pervert." (Docket Entry No. 37, Attach. 1, Ex. C at 1). Plaintiff also reported on the same IRSF that on February 21, 2011, DiStefano opened Plaintiff's cell door and stated loudly that she thought Plaintiff had called her a "bitch." (*Id.*). Plaintiff wrote that "[t]his is sexual harassment" and threatened to filed a sexual harassment suit if DiStefano was not removed from his unit. (*Id.*).

In his submissions to the Court, Plaintiff also included a letter to Assistant Superintendent Anderson that is dated April 15, 2011. (Docket Entry No. 37, Attach. 1, Ex. A). In the letter, Plaintiff complains that allegations that Plaintiff threw the TV at Pedre were fabricated in retaliation for Plaintiff's previous filings. (*Id.*). There is no evidence that the letter accompanied an IRSF and Plaintiff makes no claim to that effect. (*Id.*; Docket Entry No. 38).

Plaintiff then submitted a number of IRSFs. On April 30, 2011, Plaintiff filed an IRSF complaining of the medical treatment he received after he was attacked by Williams. (Docket Entry No. 32, Attach. 3, Ex. C). Plaintiff submitted another IRSF on May 5, 2011 complaining of the attack by Williams. (*Id.*). On May 19, 2011, submitted another IRSF concerning prison conditions generally. (*Id.*). On June 22, 2011, Plaintiff filed another IRSF complaining of the medical treatment he received. (*Id.*). Finally, on November 13, 2012, Plaintiff submitted an IRSF detailing the attack by Williams, his subsequent medical treatment, and the allegedly retaliatory conduct of Bartowski, DiStefano, and Pedre. (Docket Entry No. 37, Attach. 1, Ex. A).

---

[2] The copy of the IRSF that Plaintiff submitted to the Court contains no markings to indicate that the form was received or reviewed by the New Jersey Department of Corrections. (*See* Docket Entry No. 37, Attach. 1, Ex. C at 1). It is apparently disputed whether this IRSF was submitted to the Department of Corrections for review.

*E. Procedural History*

On June 14, 2011, Plaintiff filed a complaint ("Complaint") raising constitutional claims against Defendants State of New Jersey, New Jersey State Prison, Bartowski, Salaga, Christopher Holmes ("Holmes"), Anderson, Bell, Drumm, Warren, Pedre, DiStefano, Williams, Nwachukwu, Reddy, and four unknown John Does. (Docket Entry No. 1).

In the Complaint, Plaintiff brought three claims. (*Id*.). In Count One, Plaintiff alleged that Bartkowski, Salaga, Anderson, Bell, Drumm, and Warren exercised deliberate indifference to Plaintiff's health and safety by failing to protect him from the assault by Williams. (*Id*. at 12-14). In Count Two, Plaintiff alleged that Nwachukwu and Reddy were negligent in failing to administer adequate medical treatment following the attack. (*Id*. at 14-15). Finally, in Count Three, Plaintiff alleged that Bartowski, DiStefano, and Pedre retaliated against Plaintiff for filing grievances related to the assault. (*Id*. at 15-18).

On September 12, 2011, the Court issued an order dismissing with prejudice all claims against the State of New Jersey, New Jersey State Prison, Salaga, Holmes, Anderson, Bell, Drumm, and Warren. (Docket Entry No. 5). The Court also dismissed without prejudice all claims against Williams. (*Id*.).

On March 1, 2012, Defendants filed a motion to dismiss the Complaint in lieu of filing an answer. (Docket Entry No. 18). The Court granted Defendants' motion as to Count One but allowed Plaintiff to proceed on his retaliation claim against Defendants. (Docket Entry Nos. 22, 23).

On January 24, 2013, Reddy filed a motion to dismiss Count Two. (Docket Entry No. 30). The Court granted the motion on March 13, 2013, dismissing Count Two in its entirety.[3] (Docket Entry Nos. 39, 40). As such, the only remaining claim is Plaintiff's retaliation claim against Defendants who now seek to dismiss that claim in the instant motion for summary judgment. (Docket Entry No. 32).

III. STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." FED. R. CIV. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and

---

[3] Plaintiff brought Count Two against both Reddy and Nwachukwu; however, Nwachukwu has not been properly served. (Docket Entry Nos. 10, 12, 13). Therefore, when the Court dismissed Count Two as to Reddy, it dismissed Count Two in its entirety. (Docket Entry Nos. 39, 40).

dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

IV. ANALYSIS

Defendants argue that summary judgment is proper for three reasons. First, Defendants contend that Plaintiff has not exhausted administrative remedies. Second, Defendants argue that dismissal of Plaintiff's retaliation claim is required because he did not suffer an adverse action and was not deterred from exercising his First Amendment rights. Finally, Defendants argue that, to the extent an excessive force claim is asserted against Pedre, it must be dismissed because Plaintiff was the aggressor and Pedre used *de minimus* force in handcuffing Plaintiff. As the Court concludes that Plaintiff failed to exhaust administrative remedies, it does not consider the additional arguments made by Defendants.

  A.  *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") requires prisoners asserting claims under 41 U.S.C. § 1983 to first exhaust administrative remedies. 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "The purpose of the exhaustion requirement is (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Atum-Ra v. Ortiz*, No. 04-2711, 2006 WL 1675091, at *2 (D.N.J. June 14, 2006) (citing *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)).

"[T]he PLRA's exhaustion requirement applies to a grievance procedure described in an inmate handbook but not formally adopted by a state administrative agency." *Concepcion v. Morton*, 306 F.3d 1347, 1347-48 (3d Cir. 2002).  The New Jersey State Prison Inmate Handbook "sets forth a procedure for pursuing administrative remedies within the prison system which entails the filing of [an IRSF] and if necessary, subsequent appeal of an unfavorable decision." *Di Giovanni v. New Jersey*, No. 04-2060, 2006 WL 2524174, at *1 (D.N.J. Aug. 29, 2006).

The issue before the Court is this case is whether Plaintiff exhausted administrative remedies regarding his only remaining claim – his retaliation claim against DiStefano, Pedre, and Bartowski.[4]  In conducting such an analysis, courts consider only those efforts to exhaust administrative remedies that were made prior to filing a complaint.  *Malouf v. Turner*, 814 F. Supp. 2d 454, 463 (D.N.J. Aug. 31, 2011) (citing *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006)) ("[E]xhausting an administrative claim after filing an action in federal court does not cure the PLRA infirmity of failure to exhaust.").  Therefore, Plaintiff's IRSFs dated June 22, 2011 and November 12, 2012 are not relevant to the Court's analysis because they were filed after the Complaint was filed on June 14, 2011.

Considering only those IRSFs filed prior to initiating this lawsuit, the only conduct related to the claim of retaliation that Plaintiff claims to have reported in an IRSF is an incident in which DiStefano allegedly called Plaintiff a "pervert" and another incident in which DiStefano allegedly said that Plaintiff called her a "bitch."  (Docket Entry No. 37, Attach. 1, Ex. C).  First, the Court notes that it is not clear that these allegations, made in an IRSF dated February 22,

---

[4] Defendants argue that to the extent Plaintiff has alleged an excessive force claim against Pedre for his conduct on February 27, 2011, it should be dismissed for failure to exhaust administrative remedies and because the evidence shows Plaintiff was the aggressor.  In the Complaint, Plaintiff alleges that "Officer Pedre attacked plaintiff, throwing plaintiff to the floor, seriously injuring plaintiff's back, then placing plaintiff in handcuffs, still continuing to injure plaintiff's back, and injuring plaintiff's arms, legs, wrists."  (Docket Entry No. 1 at ¶ 39).

2011 ("February 22 IRSF"), were actually submitted to the Department of Corrections for review.  Whether the February 22 IRSF was actually submitted is not dispositive, however, because even if it was submitted for review, filing such an IRSF is insufficient to exhaust administrative remedies regarding Plaintiff's retaliation claim.  Of particular relevance in reaching this conclusion is the fact that the February 22 IRSF makes no suggestion that DiStefano's conduct was retaliatory and also makes no mention of Bartowski or Pedre whatsoever.  As such, Plaintiff did not comply with the prison's procedures for reporting his retaliation claim to the Department of Corrections as required by the PLRA.

Additionally, although Plaintiff does not directly claim that his failure to exhaust administrative remedies was due to fear of retaliation, the Court considers briefly whether such an argument has merit in the present case where retaliation is already alleged.  An administrative remedy must be "available" to be exhausted under the PLRA.  *Verbank v. Harlow*, 441 Fed. Appx. 932, 933-34 (3d Cir. 2011).  To determine "whether threats of retaliation can render administrative remedies unavailable," courts consider "whether a similarly situated individual of ordinary firmness would have deemed the grievance procedures to be available."  *Id*. (internal quotations omitted).

Here, no such analysis is necessary.  Plaintiff admits that he submitted numerous unrelated IRSFs after the allegedly retaliatory conduct.  *Malouf*, 814 F. Supp. 2d at 465 (fear of retaliation did not render administrative remedies unavailable where the Plaintiff filed an administrative remedy prior to filing the complaint and at least three other administrative remedies after filing the complaint).  Plaintiff, therefore, was not deterred from filing IRSFs due to fear of retaliation.  Instead, it appears that Plaintiff, despite successfully filing a number of IRSFs on unrelated matters and understanding the importance of exhausting administrative

9

remedies,[5] simply chose to proceed with his retaliation claim in federal court. Under the PLRA, however, Plaintiff is not entitled to make such an election. As such, Plaintiff has failed to exhaust administrative remedies and his claim of retaliation is dismissed.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is granted. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date:  April 15, 2013

---

[5] In a May 5, 2011 IRSF concerning the attack by Williams, Plaintiff explained that he was submitting it as "required by the Prisoners (sic) Litigation Reform Act to exhaust administrative remedies." (Docket Entry No. 32, Attach. 3, Ex. C).